The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Shuping. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is an unemployed, 42 year-old married female. She is a high school graduate and in 1972 completed her training as a registered nurse at Southeastern Community College, but has not since received any further formal education and/or vocational or technical training. Other than working in retail sales while in college and in tobacco, all her prior work experience has been in the nursing field providing or directing home health care services or working in hospitals or nursing homes.
2. When injured plaintiff was employed by defendant Comprehensive Home Health Care as an admission nurse and had worked there for approximately seven years both as an admission nurse and director of home health care services.
3. As an admission nurse plaintiff was responsible for performing the initial medical assessment of each home health care patient not only requiring her to complete the necessary paperwork; but among other physical activities associated with assessing these same patients required her to carry a 15 to 20 pound bag of medical equipment as well as scales to weigh the patients, deliver their needed supplies, lift or assist in lifting of the same patients and to drive for extended distances in reaching them, which involves the type of medium level work she can no longer do because of the permanent back injury sustained on May 28, 1991.
4. Although she had a long history of chronic back pain and resulting episodes thereof requiring her to be out of work, including one in January of 1991 when she was out of work for a month and continued to receive physical therapy until at least early April of that year and another less than a week before the involved back injury; plaintiff had always subsequently recovered from the same episodes enabling her to return to her regular medium level job as an admission nurse and had never experienced the type of incapacitating back and particularly right leg pain that she has since the injury she sustained on May 28, 1991 resulting in her being unable to return to her regular admissions nurse job or the type of medium level work she had done in performing it.
5. On May 28, 1991 plaintiff sustained the same back injury when a deer ran out in front of her vehicle, which (injury) materially aggravated her existing, but then non-incapacitating chronic back pain thereby proximately contributing to her ultimate disability and resulting in the incapacitating back and right leg pain she has since experienced.
6. On the same date plaintiff was treated at the Emergency Room of Columbus County Hospital, which provided medication and recommended she be seen by her family physician for follow-up, Dr. Hodgson. Two days later plaintiff came under the care of Dr. Hodgson, who similarly provided a continued conservative course of treatment consisting of medication as well as bedrest until ultimately referring her to a Wilmington neurosurgeon for evaluation, Dr. Sattler.
7. On August 8, 1991 plaintiff was seen by Dr. Sattler who not only recommended continued medication and a trial of physical therapy; but that she be treated locally by Dr. Hodgson because of her difficulty driving.
8. In the interim on July 29, 1991 at the request of the involved servicing agent plaintiff was seen for a one time evaluation by a Wilmington orthopedic surgeon, Dr. John A. Azzato, who similarly recommended a course of physical therapy for her incapacitating pain.
9. Plaintiff subsequently received physical therapy for the involved back injury locally and remained under the care of Dr. Hodgson, who continued to provide a conservative course of treatment for her disabling back and right leg pain until October 17, 1991. When Dr. Hodgson advised the rehabilitation involved, Beth Hunnicutt, of American Eagle Rehabilitation Services, that it would be at least three to six months before plaintiff could return to light work, she refused to authorize him to continue treating plaintiff and instead referred her to a neurosurgeon for evaluation, Dr. Daniel J. Miller of Wilmington.
10. On December 11, 1991 plaintiff was initially seen by Dr. Miller and he subsequently referred her for a diagnostic EMG to Dr. Fred Stowe, a Fayetteville neurologist, to determine whether she had a S1 radiculopathy when he saw her in follow-up in March of 1992. Dr. Miller recommended a diagnostic myelogram and CT scan because of the positive results of the EMG she had undergone; however, the same testing was not performed because a dispute arose between plaintiff and Dr. Miller over the course of treatment and he then terminated the physician-patient privilege on May 6, 1992 and as a result the further testing recommended was not done at the time.
11. When she returned to Dr. Hodgson on July 8, 1992 because of her incapacitating back and right leg pain he not only gave her a note indicating that it was his opinion that she was not ready to return to work, but recommended she attempt to obtain authorization from the rehabilitation nurse involved to be evaluated by Dr. David Kelly, the Winston-Salem neurosurgeon, who on February 20, 1992 he had suggested plaintiff see for a second opinion in the event Dr. Miller recommended surgery because of the S1 radiculopathy shown on EMG testing.
12. Although on one occasion in July of 1992 plaintiff attempted to return to work for defendant-employer; she was unable to because of her incapacitating back and right leg pain and was subsequently terminated from defendant's employ on July 23, 1992.
13. Ultimately on August 10, 1992 Dr. Hodgson specifically referred plaintiff to Dr. Kelly for evaluation and he initially saw her on August 28, 1992 and recommended conservative treatment as well as a diagnostic myelogram and CT scan that Dr. Miller earlier had, but had not been done.
14. In the interim two days earlier plaintiff was seen at defendant-employer's request by Dr. John T. Langley, a Kinston orthopedic surgeon, for a one time evaluation, who felt she should be able to return to light work. At that time, however, plaintiff had neither reached maximum medical improvement and/or the end of the healing period from and following her May 28, 1991 back injury nor was she able to return to her regular medium level admissions nurse's job — much less to light work; but rather, remained totally incapacitated by the same injury. Even assuming arguendo, however, that she had sufficiently recovered from the involved back injury so as to be capable of light duty work; defendant-employer never offered to provide her with the same work during the healing period; but rather, had terminated her from its employ a month earlier.
15. Plaintiff ultimately reached maximum medical improvement and/or the end of the healing period from and following her May 28, 1991 back injury on or about March 19, 1993 when Dr. Kelly rated her for permanent-partial disability, at which time she retained a five (5) percent permanent-partial disability of the back as a result of the same injury and because of her permanent back injury is unable to return to her regular admissions nurse's job or similar medium level work; but rather, only to light to sedentary work not inconsistent with the limitations described in the stipulated Estimated Functional Capacity Form filled out by Dr. Kelly on January 30, 1993 at the request of the rehabilitation nurse involved.
16. There is further no evidence that the type of suitable alternate light to sedentary work is available for someone of plaintiff's age, education, background and work experience having the physical limitations she does from her permanent back injury — much less that she can obtain it.
17. In late December of 1992 at the request of the involved servicing agent a rehabilitation consultant was assigned to the case and the same consultant, Maria King, initially met with plaintiff on January 8, 1993. Although from then until leaving the area to move to Charlotte in June of that year the same vocational consultant attempted to find plaintiff the type of suitable light to sedentary work required by her permanent back injury; she was unable to and defendant-employer has since abandon further vocational rehabilitation efforts or at least not renewed them. Plaintiff did cooperate with those same efforts by not only contacting the Employment Security Commission, but (contacted) the employers with potentially available jobs that Maria King located. Despite her efforts plaintiff was never able to obtain employment during the approximate six months that Maria King worked with her before moving to Charlotte. Although in March of 1993 Maria King obtained the approval of Drs. Langley and Azzato, who had not seen plaintiff since August of 1992 and July of 1991 respectively for potentially available jobs she had identified as a infusion therapist, assistant nurse manager and home health nurse; the latter two were clearly outside of plaintiff's physical limitations; however, in any case she was never able to obtain any of the three jobs.
To the extent that defendant's desire to renew vocational rehabilitation efforts in an attempt to find plaintiff the type of suitable light to sedentary work required by her permanent back injury; she is obligated to cooperate in any reasonable efforts or have her compensation benefits suspended until she does; however, to date, defendant's have not shown that plaintiff engaged in the type of conduct during the earlier vocational rehabilitation efforts provided that would be tantamount to a refusal to accept suitable employment resulting in suspension of her compensation benefits being justified.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
As a result of the permanent back injury she sustained on May 28, 1991 plaintiff remains totally disabled entitling her to compensation at a rate of $406.00 per week from May 28, 1991 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains totally disabled, subject to defendant-employer being entitled to a credit for the weekly compensation benefits that it has continued to pay under the Industrial Commission's prior award since May 28, 1991. G.S. § 97-2(6); G.S. § 97-29.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff, on account of her continuing total disability, compensation at a rate of $406.00 per week from May 28, 1991 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains totally disabled, subject to a credit for the weekly compensation benefits that defendant-employer has continued to pay under the Industrial Commission's prior award since May 28, 1991.
2. As a reasonable attorney fee for plaintiff's counsel defendant's shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendant's are obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto, when bills for the same are submitted on proper forms, through the above-named servicing agent, to the Industrial Commission for approval and are approved by the Commission.
4. Defendant shall bear the costs, including as part thereof expert witness fees in the amount of $250.00 apiece to Dr. John A. Azzato and Dr. David James Miller, each of whom appeared by way of deposition and gave expert medical testimony herein as well as the following expert witness fees previously awarded to the extent they have not already been paid; $200.00 to Dr. Hodgson, $250.00 to Dr. Kelly and $300.00 to Dr. Langley.
 S/ __________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
CMV/CNP/tmd 5/8/95